**Ralph TISEI, et al.**

**v.**

**TOWN OF OGUNQUIT.**

**Erland COOMBS, et al.**

**v.**

**TOWN OF OGUNQUIT.**

Supreme Judicial Court of Maine.

Argued March 7, 1985.

Decided April 25, 1985.

---

1. M.R.Evid. 614(b) provides:
 The court may interrogate witnesses, whether called by itself or by a party.

Fine & Cohen, Janis Cohen (orally), Sheila J. Fine, Ogunquit, for plaintiffs.

Murray, Plumb & Murray, John C. Bannon (orally), E. Stephen Murray, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN, and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Defendant Town of Ogunquit appeals the order of the Superior Court (York County) granting summary judgment and attorney's fees to the plaintiffs in these consolidated cases. The Superior Court justice found unconstitutional both the Town's Temporary Moratorium on Development and its Public Sewer Usage Limitations Ordinance, and the Town appealed to this court. We now vacate that judgment. We hold initially that the plaintiffs in the *Coombs* case lack the standing necessary to bring their lawsuit. Moreover, we find that the record demonstrates the existence of genuine issues of material fact, which make summary judgment inappropriate. Accordingly, we remand these cases for dismissal of *Coombs v. Town of Ogunquit* because of the Coombses' lack of standing, and for a full hearing on the merits in *Tisei v. Town of Ogunquit.* We also vacate the award of attorney's fees.

Ogunquit has experienced rapid growth in the last several years. This appeal arises from plaintiffs' challenges to two of the Town's attempts to limit that growth. On August 9, 1983, the Ogunquit selectmen enacted a 120-day emergency moratorium on development. The stated purpose of the moratorium was to avoid overloading the Town's public services (police, fire, road maintenance, waterfront protection), to lessen the strain on the Town's water supply and sewer system, and to protect the soil of the Town. At the same time, the selectmen appointed a committee to review the Town's existing ordinances. Plaintiffs never challenged the first moratorium.

The 120-day moratorium expired on December 6, 1983, and on that date the voters at a special town meeting enacted a "Temporary Moratorium on Development." The "necessity" section of that ordinance reads in part:

Since the problems identified by the Selectmen in their emergency ordinance of August 9, 1983 still remain and since there has not been adequate time for public study, consideration and debate of the many suggestions of the committee, it is necessary to extend or re-enact the terms of the moratorium for a period of

an additional 88 days or until the annual Town meeting on March 3, 1984.

During the effective period of the temporary moratorium plaintiffs applied for building permits for motel subdivisions. The Code Enforcement Officer and the Planning Board refused to accept those applications.[1]

At a town meeting on March 3, 1984, the voters enacted a "Public Sewer Usage Limitations Ordinance." The ordinance requires all future developers to obtain from the Town a sewer user permit to discharge into Ogunquit Sewer District's system before the Town will approve any construction that is required by law to connect to the sewers. It also limits the total amount of yearly increase in discharge into the system, as well as the number of permits any builder may receive. The applications are processed on a first-come, first-served basis, and simultaneous applications in excess of the remaining available permits are determined by lottery. The purpose section of that ordinance reads:

> The Ogunquit Sewer System is inadequate to meet the current and anticipated needs of the Town for the disposal of domestic and commercial sewage.... While the Sewer District is taking steps to cure some of these problems and increase the system's capacity, these steps cannot all be accomplished immediately and further study by the District is necessary to identify all problems and solutions. Accordingly it is the intent of this Ordinance that new or additional sewage be discharged into the system in moderate amounts to permit some growth but to insure that any excess capacity which develops is portioned out fairly and over a period of time until the District has taken all steps necessary to cure the

system's problems and significantly increase its capacity.

By March 5, 1984, the applications for sewer user permits exceeded the number available, and permits were issued by lottery, as provided in the ordinance. Plaintiffs did not receive an adequate number of permits to allow them to proceed with construction of their motels.

Plaintiffs filed separate but identical complaints in February 1984. On April 19, 1984, after the complaints had been amended and the cases consolidated, plaintiffs filed motions for summary judgment on two counts of their three-count complaints, and a Superior Court justice held a hearing on the motion on June 6. The justice granted the motion declaring both ordinances invalid, and, pursuant to M.R.Civ.P. 54(b), entered an order of final judgment on those two counts. This appeal followed.

## I. Standing of the Plaintiffs in *Coombs v. Town of Ogunquit*

■ As we stated recently in *Ricci v. Superintendent, Bureau of Banking*, 485 A.2d 645, 647 (Me.1984), "[s]tanding of a party to maintain a legal action is a 'threshold issue' and our courts are only open to those who meet this basic requirement." On appeal we will address questions of standing even if the parties have not raised the issue in the Superior Court. *Franklin Property Trust v. Foresite, Inc.*, 438 A.2d 218, 220 (Me.1981); *Nichols v. City of Rockland*, 324 A.2d 295, 296 (Me.1974).

■ To have standing to challenge a municipality's land use regulations, a party must possess sufficient "title, right or interest" in the land to confer upon him lawful power to use it or to control its use. *Walsh v. City of Brewer*, 315 A.2d 200, 207

---

1. Facially, plaintiffs' challenge to the Temporary Moratorium on Development appears to have become moot when the moratorium expired by its own terms on March 3, 1984. *See Graffam v. Wray*, 437 A.2d 627, 631 (Me.1981) (no longer a controversy between the parties due to intervening circumstances). However, in their amended complaint filed April 30, 1984, plaintiffs, apparently seeking to avoid the mootness

defense, allege that "if not for the invalid moratorium [plaintiffs'] application [for their motel project] would have been accepted and [plaintiffs] would have had a pending application before the [Planning] Board on March 4, 1984." In any event, we reserve any mootness question for disposition in connection with a trial on the validity of the Sewer Usage Limitations Ordinance.

(Me.1974). In the case at bar, the affidavits before this court demonstrate that plaintiffs in *Coombs v. Town of Ogunquit* lack any legal interest in the property that they sought to develop. The Coombses do not own the site of their proposed motel, although they did for a time have an irrevocable option to purchase the parcel. That option expired on February 1, 1984, and the Coombses' complaint was not filed until February 17. On that latter date, and at all times since, the Coombses have had no interest in the land adequate to give them standing. Consequently, the action brought by the Coombses against the Town must be dismissed.

## II. The Entry of Summary Judgment

### A. The Proceedings Below

At the June 6 hearing on the motion for summary judgment, plaintiffs called three witnesses; the Town cross-examined, and introduced exhibits through, those witnesses. Following that testimonial hearing, the justice entered summary judgment for plaintiffs. Holding this testimonial hearing on a motion for summary judgment was completely irregular and unauthorized. The procedure employed on June 6 is not available under the Maine Rules of Civil Procedure, and it transfored summary judgment, a device designed to simplify and expedite litigation, into a mechanism for confusion and delay.

■ Rule 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." The rule obviously excludes the taking of oral testimony on a summary

judgment motion.[2] Creating a record through a testimonial hearing is entirely inappropriate when the Superior Court is considering a summary judgment motion. Summary judgment proceedings address only questions of law; they may not, by definition, deal with factual issues except to the extent of determining from documents before the court that there exists no genuine issue of material fact.

■ Rule 56 was intended to permit the *prompt disposition* of cases in which the dispute is solely dependent on the resolution of an issue of law. *See* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 56.1, at 33 (2d ed. 1970). If a court should take testimony on a motion for summary judgment, it would be trying fact issues and there is no advantage over a full hearing on the merits. Moreover, the taking of a portion of the available evidence, as in this case, serves to obfuscate the issues and hampers the early disposition of the proceedings, exactly contrary to the commendable goal of Rule 56.

■ Counsel for both sides continue to assert that they and the trial justice, in the unusual proceedings of June 6, were not trying the consolidated cases on their full merits, but rather were merely introducing evidence on the summary judgment question of whether there was a genuine issue of material fact. For the purposes of this appeal, we will take the parties at their word. In our review of the summary judgment entered by the Superior Court, we will treat the sworn testimony of plaintiffs' witnesses, along with the exhibits introduced through them, as if that evidence had come through affidavits presented in support of or in opposition to the summary judgment motion.

---

2. The general provision of M.R.Civ.P. 43(e), which permits the court to hear a motion "wholly or partially on oral testimony," applies only when the "motion is based on facts not appearing of record"—a situation antithetical to that appropriate for summary judgment. In any event, the specific provision of M.R.Civ.P. 56(c), specifying what is to be considered on a motion for summary judgment, controls the general provision of Rule 43(e). *Cf. Maine Turnpike Authority v. Brennan*, 342 A.2d 719, 728 (Me. 1975) (specific language of a statute controlling over more general provisions).

B. Temporary Moratorium on Development

 This court has held that municipalities possess the power to regulate their growth and development by enacting "slow growth" ordinances, *Begin v. Town of Sabattus*, 409 A.2d 1269, 1275 (Me.1979), and other jurisdictions have permitted municipalities to establish short-term moratoria on development. *See Associated Home Builders v. City of Livermore*, 18 Cal.3d 582, 135 Cal.Rptr. 41, 557 P.2d 473 (1976); *Golden v. Planning Board of Town of Ramapo*, 30 N.Y.2d 359, 334 N.Y.S.2d 138, 285 N.E.2d 291 (1972); *see generally* 2 R. Anderson, *American Law of Zoning 2d* § 10.03 (1976 & Supp.1984). We agree that in appropriate circumstances a municipality may use its police powers to withhold for a limited time approval of any new construction projects. We accord any growth-controlling ordinance a presumption of constitutionality and employ a three-step process, first articulated in *State v. Rush*, 324 A.2d 748 (Me.1974), to determine whether the municipality has exercised its police power within the limits of due process:

1. The *object* of the exercise must be to provide for the public welfare.
2. The legislative *means* employed must be appropriate to the achievement of the ends sought.
3. The *manner of exercising* the power must not be unduly arbitrary or capricious.

*Id.* at 753 (emphasis in original). It is similarly well-established that the party challenging the ordinance must establish the complete absence of any state of facts that would support the need for the enactment. *Gabriel v. Town of Old Orchard Beach*, 390 A.2d 1065, 1071 (Me.1978); *State v. Rush*, 324 A.2d at 753.

 In the case at bar we conclude that a genuine issue of material fact exists as to whether Ogunquit was faced with an emergency in the provision of public services of a nature to justify its enactment of a moratorium on development. The ordinances establishing the zoning moratoria were before the court as attachments to the complaints. In those ordinances, statements of "purpose" and "necessity" assert that the Town's public services were stretched to their limits. On the other hand, at the hearing of June 6 the three witnesses testified that, although emergency vehicles had difficulty maneuvering through Ogunquit's crowded downtown streets in the summer, in general growth was not threatening to overload the Town's utilities.[3] That testimony directly contradicts circumstances requiring enactment of the moratorium as asserted in the ordinances themselves. With only the ordinances attached to the complaints and the testimony at the hearing before the court, it was impossible to state definitely whether Ogunquit was facing growth that would outdistance its ability to provide public services. "[S]ummary judgment is an extreme remedy which should be cautiously invoked. It is specifically reserved for those occasions on which the facts before the court so conclusively preclude a party's recovery that a judgment in favor of the other party is the only possible result." *Utica Mutual Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 468 A.2d 315, 317 (Me.1983) (citations omitted). In this case, where there is obviously a genuine issue of material fact present, summary judgment was inappropriate.

C. Public Sewer Usage Limitations Ordinance

The Superior Court in granting plaintiffs' motion for summary judgment ruled that the Sewer Usage Limitations Ordinance was an invalid exercise of municipal regulation in violation of the "Home Rule" provisions of 30 M.R.S.A. § 1917 (1978) and also found that the ordinance violated plaintiffs' due process rights. We hold that the Supe-

---

**3.** The court heard testimony from David Sweet, Superintendent of the Kennebunk, Kennebunkport and Wells Water District; Bradford Steel, an Ogunquit selectman; and Richard Prescott, Chairman of the Board of Trustees of the Ogunquit Sewer District.

rior Court erred in both rulings. We find no violation of the Home Rule Statute in the Town's action in imposing future limitations on sewer usage within Ogunquit. On the due process issue, we find that a genuine issue of material fact existed, thus preventing a declaration as a matter of law that the ordinance was unconstitutional.

Initially, we note that it is well established that whether a public utility is stockholder-owned or, as Ogunquit Sewer District, is publicly owned, it is subject to the exercise of police power by the State and its political subdivisions. *See Central Maine Power Co. v. Waterville Urban Renewal Authority,* 281 A.2d 233 (Me.1971) (undergrounding of facilities required of a stockholder-owned public utility); *Brunswick and Topsham Water District v. W.H. Hinman Co., Inc.,* 153 Me. 173, 136 A.2d 722 (1957) (relocation of mains and pipes required of public utility created by the legislature); *Hampton Roads Sanitation District Commission v. City of Chesapeake,* 218 Va. 696, 240 S.E.2d 819 (1978) (relocation of sewer mains required of public utility created by the legislature). However, a town's exercise of the State's police powers is not unlimited. A municipality has the right to use those powers only as authorized by Maine's Home Rule Law, 30 M.R.S.A. § 1917. By that law, municipalities may exercise only a "power or function which the legislature has power to confer upon it, *which is not denied either expressly or by clear implication.*" (Emphasis added) *Id.*[4] Our analysis in each case must focus on the enactments of the legislature in the area that the municipality is undertaking to regulate. If the legislature intended to create a comprehensive and exclusive regulatory scheme, then the municipal ordinance must fail as a violation of the Home Rule statute. *See, e.g., Ullis v. Town of Boothbay Harbor,* 459 A.2d 153

(Me.1983); *Schwanda v. Bonney,* 418 A.2d 163 (Me.1980).

In the case at bar we are faced with the question whether the legislature in chartering the Ogunquit Sewer District, P. & S.L.1963, ch. 87, expressly or implicitly limited the Town's power to control its growth and development by forbidding the Town from regulating in any way future sewage disposal. *See Begin v. Town of Sabattus,* 409 A.2d at 1275. We find that nothing in the sewer district's charter prohibits the Town from restricting future access to the sewer system as a legitimate regulation of a public utility and as one tool in the Town's efforts to control its growth and development.

Ogunquit's sewer district charter provides that "the purpose of [the] district ... shall be to take over, control, operate and manage [Ogunquit's] sewer system...." P. & S.L.1963, ch. 87, § 1. "Every building within the district ... within 150 feet of a public sewer, shall ... be connected with the sewer...." *Id.,* § 12. The only prerequisite to connecting to the system provided for in the charter is the permission of the district's trustees, and payment of any applicable entrance fee. *Id.,* § 7. Based on these sections of the charter, plaintiffs argue that the law sets up a comprehensive scheme, and prevents the Town from enacting any ordinance restricting future buildings within 150 feet of the sewers from connecting to the system.

The grant of powers to the District to run the sewer system in Ogunquit is broad, but not absolute. The Town is only divested of the right to "build, maintain, and repair" sewer facilities. *Id.,* § 29. The Town is not expressly divested of its general police powers to control waste disposal, nor is it in any way limited in planning the future growth and development of the municipality. Similarly, the law grants

---

**4.** This statute finds a constitutional basis in Article VIII, Part Second, Section 1 of Maine's Constitution:

The inhabitants of any municipality shall have the power to alter and amend their charters on all matters, not prohibited by Constitution or general law, which are local and municipal in character. The Legislature shall prescribe the procedure by which the municipality may so act.

no police powers to the sewer district and, importantly, grants the district no mechanism to control future growth of the system.[5] Nothing in the charter indicates that by creating the sewer district the legislature was attempting to carve out one of the many methods the Town might otherwise use to regulate its future growth.[6] The charter is correctly interpreted to mean that the Town of Ogunquit retains its police power to regulate future sewage disposal as a planning tool for the good of the townfolk, while Ogunquit Sewer District, a public utility, operates its system within long-range development plans made by the Town.

This case can be distinguished from our holding in *Ullis v. Town of Boothbay Harbor*, 459 A.2d 153, where we held that a municipality may not impose requirements for obtaining a liquor license in excess of those mandated by the State, and from our decision in *Schwanda v. Bonney*, 418 A.2d 163, where we ruled that a town could not mandate additional requirements for a license to carry a concealed weapon. In our prior cases the legislature had enacted comprehensive, statewide schemes to exercise the police power for regulating important matters of the public safety. In the case at bar the legislature merely created a utility to render public utility sewerage service within the territory of the Town of Ogunquit. In neither scope nor in geography was the sewer district's charter as comprehensive as the general state statutes at issue in *Ullis v. Town of Boothbay Harbor* and *Schwanda v. Bonney*. We cannot read that charter to prohibit the Town, expressly or by implication, from regulating future sewage disposal in the exercise of its police powers to control growth and to plan for future development.

Having held that there is no threshold bar to the Town's exercise of its police powers over future sewage disposal, we must next consider whether summary judgment was appropriate on any other ground. We examine the Sewer Usage Limitations Ordinance for a violation of due process by the criteria outlined in *State v. Rush*, 324 A.2d 748, and discussed in part II(B) of this opinion. Such an analysis ultimately comes down to a question whether there is any set of *facts* upon which the legislative body could find that the ordinance was necessary. Evidence on that issue is contained in the "purpose" section of the ordinance, and the language of that section conflicts with the testimony at the June 6 hearing. Accordingly, as with the validity of the moratorium on development, the validity of the Sewer Usage Limitations Ordinance involves a genuine issue of material fact, and could not have been decided on a motion for summary judgment.

### III. Award of Attorney's Fees

The Superior Court justice allowed attorney's fees, under 42 U.S.C. § 1988, to plaintiffs as prevailing parties on their motions for summary judgment. Since we hold that plaintiffs were not entitled to summary judgment, they also did not qualify as prevailing parties within the meaning of section 1988. *See Thiboutot v. State*, 405 A.2d 230, 237–40 (Me.1979), *aff'd sub nom. Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). The award of attorney's fees must be vacated.[7]

The entry is:

---

5. While it would be possible for the trustees to avoid overburdening the system by denying permits once the sewers have reached capacity, this would certainly be an inefficient method of planning.

6. Our view of the Ogunquit Sewer District charter is shared by the district itself. In a letter to the Ogunquit Planning Board the district's engineer wrote that "[t]he Ogunquit Sewer District does not have the authority or intent to enact any ... policy of [limiting] entrances per year."

7. We thus do not reach the Town's contention on appeal that even if the summary judgment had been properly granted, it was an abuse of discretion for the motion justice to award attorney's fees to plaintiffs against the Town in the circumstances of this litigation.

Judgment in *Coombs v. Town of Ogunquit*, Docket No. CV–84–91, vacated and remanded for entry of judgment of dismissal for lack of standing.

Judgment in *Tisei v. Town of Ogunquit*, Docket No. CV–84–62, vacated and remanded for further proceedings consistent with the opinion herein.

Award of attorney's fees vacated. Costs on appeal awarded to appellants.

All concurring.