**DANISH HEALTH CLUB, INC.**

v.

**TOWN OF KITTERY, et al.**

Supreme Judicial Court of Maine.

Argued June 6, 1989.
Decided July 21, 1989.

Richard N. Foley (orally), James P. Loring, Wholey & Pelech, Portsmouth, N.H., for plaintiff.

Duncan A. McEachern (orally), McEachern & Thornhill, Kittery, for defendants.

Before McKUSICK, C.J., and WATHEN, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

GLASSMAN, Justice.

The Danish Health Club, Inc. (Club), plaintiff, appeals from a judgment of the Superior Court (York County; *Cole, J.*) finding the Therapeutic Massage Ordinance (Ordinance) enacted by the Town of Kittery (Town), defendant, constitutional and imposing a fine of $12,000 on the Club for violating the Ordinance. On appeal, the Club contends the Ordinance and fine violate the protection afforded by the due process and equal protection clauses of the fourteenth amendment to the Constitution of the United States and article I, section 6–A of the Maine Constitution. We affirm the judgment.

The Kittery Town Council adopted the Therapeutic Massage Ordinance, which became effective on March 9, 1987. The Ordinance required that all massage establishments operating in Kittery become licensed within a 90–day grace period. It further established numerous regulations to govern the operation of therapeutic massage and massage establishments in areas such as alcohol use, access, clothing, equipment and supervision.

By its complaint filed on July 1, 1987, nearly four months after the effective date of the Ordinance, the Club sought a declaration that the Ordinance was unconstitutional and an injunction to permanently restrain the Town's enforcement of the Ordinance. By its answer and counterclaim, the Town sought preliminary and permanent injunctive relief to enjoin the Club from operating without complying with the Ordinance and to impose the $200 per day fine provided in the Ordinance for each day of violation.

The parties agreed that the Club engaged in a business which came within the purview of the Ordinance and that neither the Club nor any of its employees had sought the necessary licenses or otherwise complied with the Ordinance. The parties further agreed that if the Town were to prevail, a hearing on the issue of the fine would be held at a later date. After a hearing, the court denied the relief sought by the Club and granted the Town's counterclaim to the extent that the Club was given seven days from the date of the order to apply for the license required by the Ordinance. After a later hearing, the court assessed a $12,000 fine against the Club for operating in violation of the Ordinance. This appeal followed.

I

The Club first contends that the Ordinance has no reasonable relationship to the public health, safety or welfare and is, therefore, an unreasonable, arbitrary and capricious exercise of the Town's police power. We disagree.

30 M.R.S.A. § 2151 (1978 & Supp.1988) provides in pertinent part:

A municipality may enact police power ordinances for the following purposes:

1. General.

A. Promoting the general welfare; preventing disease and promoting health; providing for the public safety.

We have long recognized a presumption in favor of the validity of an ordinance passed in pursuance of statutory authority, and if an ordinance is on its face reasonable " 'the objecting party must produce evidence to show that it is, in fact, unreasonable in its operation.' " *Buck v. Kilgore*, 298 A.2d 107, 109–110 (Me.1972) (quoting *State v. Small*, 126 Me. 235, 237, 137 A. 398 (1927)). *See also Warren v. Municipal Officers of Gorham*, 431 A.2d 624, 628 (Me.1981) (The burden is on the party attacking the constitutionality of an ordinance to show by clear and irrefutable evidence that it infringes the paramount law.). "Under the due process clauses of the federal and state constitutions, a town ordinance must 'bear a reasonable relationship to the public health, safety, morals or general welfare' and

'must not be unreasonable, arbitrary, or discriminatory.' " *Stewart v. Inhabitants of Durham,* 451 A.2d 308, 311 (Me.1982) (quoting *Warren,* 431 A.2d at 627); *see Ferguson v. Skrupa,* 372 U.S. 726, 731–32, 83 S.Ct. 1028, 1031–32, 10 L.Ed.2d 93 (1963); *Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 490, 75 S.Ct. 461, 465, 99 L.Ed. 563, *reh'g denied,* 349 U.S. 925, 75 S.Ct. 657, 99 L.Ed. 1256 (1955). We have separated the requirements of due process in the exercise of police power into three component elements:

1. The *object* of the exercise must be to provide for the public welfare.

2. The legislative *means* employed must be appropriate to the achievement of the ends sought.

3. The *manner of exercising* the power must not be unduly arbitrary or capricious.

*State v. Rush,* 324 A.2d 748, 753 (Me.1974) (emphasis in original) (*quoted in Tisei v. Town of Ogunquit,* 491 A.2d 564, 569 (Me. 1985)). Further, in order to prevail, the party challenging the Ordinance must establish the complete absence of any state of facts that would support the need for the enactment. *Tisei,* 491 A.2d at 569. The stated purpose of the Ordinance is "to promote the public health, safety and general welfare." Kittery, Me., Therapeutic Massage Ordinance § 1 (Feb. 9, 1987). Although the Ordinance does not specifically state the prevention of diseases as a purpose, such a goal falls within the statutory police power of a municipality and is patently a part of the more general goal of promoting health.

■ Although the Club challenges the entire Ordinance, it specifically directs its complaint to those provisions dealing with prohibiting the dispensing of alcoholic beverages, limitation of business hours, speci-

fying equipment to be used for the therapeutic massages and assuring a ready means of exit in case of an emergency on the premises. As with the remainder of the Ordinance, we find these provisions have a rational relationship to the protection of the health, safety and welfare of the general public and were a proper exercise of the Town's police power. *See National Hearing Aid Centers, Inc. v. Smith,* 376 A.2d 456, 461 (Me.1977) ("In order to withstand the test of reasonableness the regulatory means must bear a rational relationship to the evil sought to be corrected."). *See also Harper v. Lindsay,* 616 F.2d 849, 854, 855 (5th Cir.1980) (state regulation of massage parlor reviewed under rational basis standard to determine if challenged regulation bears rational relation to public health, safety, morals and general welfare); *Wes Ward Enterprises, Ltd. v. Andrews,* 42 Ill. App.3d 458, 355 N.E.2d 131, 136 (1976) (to be proper exercise of police power, ordinance to regulate massage parlors must "tend[ ], in some degree, toward prevention of offenses or the preservation of the public health, morals, safety or welfare").

■ The Club next contends that by exempting several other health professionals from the coverage of the Ordinance it, in effect, singles out massage parlors for restrictive treatment.[1] Such a distinction, the Club contends, is arbitrary and irrational.[2]

To prove that the Ordinance violates the equal protection clause of the federal and state constitutions by reason of an illegal classification, the Club must show " 'by clear and irrefutable evidence its arbitrariness and irrationally discriminatory nature.' " *Jackson v. State,* 544 A.2d 291, 295 (Me.1988) (quoting *Beaulieu v. City of Lewiston,* 440 A.2d 334, 338 (Me.1982)); *see*

---

1. Section 4B of the Kittery, Me., Therapeutic Massage Ordinance (Feb. 9, 1987) states as follows:

    (B) These regulations do not apply to a licensed physical therapist, a licensed athletic trainer, a licensed physician or chiropractor, a licensed nurse, a licensed cosmetologist, a licensed barber, or any health or hygiene professional, duly licensed under the laws of this

State and any person working under the direct supervision of any such licensed professional while any such individuals administer therapeutic massage in any place described in section (A) above.

2. The Club does not argue on appeal that stricter scrutiny than the "rational basis" test should apply to its equal protection claim.

*City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976), *on remand,* 537 F.2d 856 (5th Cir.1976); *Railway Express Agency v. New York,* 336 U.S. 106, 110, 69 S.Ct. 463, 465, 93 L.Ed. 533 (1949); *Lambert v. Wentworth,* 423 A.2d 527, 532–32 (Me.1980). The law will be upheld if there is any conceivable state of facts that justifies the distinction. *Beaulieu,* 440 A.2d at 338.

Contrary to the Club's contentions, the Ordinance does not invidiously discriminate against it. Nurses, barbers, physical therapists and others excepted from the Ordinance must be licensed under the laws of the State and are already heavily regulated by state law and hence the Town could conclude that they are not in need of additional local regulation. *See, e.g.,* 32 M.R.S.A. §§ 301–408 (1988) (barbers); 32 M.R.S.A. §§ 1551–1657B (1988 & Supp.1988) (cosmetologists); 32 M.R.S.A. §§ 2101–2261 (1988) (nurses); 32 M.R.S.A. §§ 3111–3119 (1988) (physical therapists). *See also Pollard v. Cockrell,* 578 F.2d 1002 (5th Cir.1978) (regulations on massage parlors do not violate equal protection); *Wes Ward Enterprises, Inc. v. Andrews,* 42 Ill.App.3d 458, 355 N.E.2d 131 (1976) (classification in massage ordinance excluding other occupations that may involve massage and that are already licensed and regulated by the state has a reasonable basis and does not arbitrarily discriminate). The exclusion from the Ordinance of those persons already licensed and regulated by state laws does not entitle the Club to a determination that the classification has no rational basis.

■ The Club also contends that certain provisions in the Ordinance do not provide sufficient notice of proscribed conduct. Under the vagueness doctrine, an ordinance may be void if "its language either forbids or requires the doing of an act in terms so vague that people of common intelligence must guess at its meaning." *City of Portland v. Jacobsky,* 496 A.2d 646, 649 (Me.1985); *Shapiro Brothers Shoe Co., Inc. v. Lewiston–Auburn Shoeworkers Protective Association,* 320 A.2d 247, 253–254 (Me.1974). To meet the requirements of due process, the ordinance must provide reasonable and intelligible standards to guide the future conduct of individuals. *Jacobsky,* 496 A.2d at 649.

Although the Ordinance might have been drafted with greater precision, it gives sufficient warning of conduct that will render individuals liable to the Ordinance's penalties. *See Village of Hoffman Est. v. Flipside, Hoffman Est., Inc.,* 455 U.S. 489, 498, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982); *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926); *Maine Milk Producers, Inc. v. Com'r of Agriculture, Food and Rural Resources,* 483 A.2d 1213, 1220 (Me. 1984). Because the regulations are sufficiently precise to give fair warning of the proscribed conduct, we conclude they are not impermissibly vague. *See Harper v. Lindsay,* 616 F.2d 849, 857 (5th Cir.1980).

## II

Finally, the Club contends that by the trial court's imposition of a $12,000 fine for noncompliance with the Ordinance it was denied due process in challenging the Ordinance. It argues that due process requires a tolling period during which a challenging party can secure a complete judicial review of an ordinance without incurring the risk of ruinous penalties if the suit is lost.

■ As the Club points out, there is clearly a due process right to contest the validity of an ordinance or statute without having to face ruinous penalties if the suit is lost. A statutory scheme violates due process if "the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate [an affected party] from resorting to the courts to test the validity of the legislation." *Ex parte Young,* 209 U.S. 123, 147, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *see Oklahoma Operating Co. v. Love,* 252 U.S. 331, 40 S.Ct. 338, 64 L.Ed. 596 (1920); *Wadley S. Ry. Company v. Georgia,* 235 U.S. 651, 35 S.Ct. 214, 59 L.Ed. 405 (1915); *Brown & Williamson Tobacco Corp. v. Engman,* 527 F.2d 1115, 1119 (2d Cir.1975). This does not, however, establish a constitutional right to risk-free litigation under all possible circumstances. *Ford Motor Co. v. Coleman,* 402 F.Supp.

475, 483–84 (D.D.C.1975). Due process requirements are met by a statutory scheme that provides an opportunity for testing the validity of an ordinance without incurring the prospect of debilitating penalties. *Brown,* 527 F.2d at 1119; *Wagner Seed Co. v. Daggett,* 800 F.2d 310, 315 (2d Cir. 1986). As stated in *St. Louis, Iron Mountain & Southern Railway Company v. Williams,* 251 U.S. 63, 40 S.Ct. 71, 64 L.Ed. 139 (1919):

> It [ ] is true that where [ ] an opportunity [to contest the validity of a statute] is afforded and the [statute] is adjudged valid, or the carrier fails to avail itself of the opportunity [to contest the statute's validity], it then is admissible, so far as due process of law is concerned, for the state to enforce adherence to the rate by imposing substantial penalties for deviations from it.

*Id.* at 65, 40 S.Ct. at 72. As long as an alternative path of access to the courts, free of the threat of coercive penalties, is available, the constitutional requirements of due process are met. *Woodland Private Study Group v. State of New Jersey,* 616 F.Supp. 794, 806 (D.N.J.1985).

■ Here, 340 days elapsed between expiration of the 90–day grace period and the hearing on the Club's complaint. At no time did the Club seek a preliminary injunction. *See* 2 R. Field, V. McKusick & L. Wroth, *Maine Civil Practice* § 65.4 (2d ed. 1970) (A complaint should ask for a preliminary as well as a permanent injunction, if both are desired.). Under M.R.Civ.P. 65 the Club could have sought a preliminary injunction to halt the accumulation of penalties. The purpose of a preliminary injunction is to preserve the status quo until a trial can result in a final determination of the rights of the parties. 2 Field, McKusick & Wroth, § 65.2 at 108. Although granted without a full adjudication on the merits, a preliminary injunction has all the force of a permanent injunction during its period of effectiveness. 11 C. Wright & A. Miller, *Federal Practice and Procedure,* § 2947 (1973). Thus, the Club had the opportunity to test the validity of the Ordinance without suffering any penalties, but did not choose to avail itself of this option.

The fact that the option was available, in and of itself, satisfies the requirements of due process. *See Brown,* 527 F.2d at 1119.

The entry is:

Judgment affirmed.

All concurring.