STATE of Maine

v.

Eugene EATON.

Supreme Judicial Court of Maine.

Argued June 1, 1990.

Decided July 5, 1990.

James E. Tierney, Atty. Gen., Thomas A. Harnett (orally), Asst. Atty. Gen., Augusta, for plaintiff.

William N. Ferm (orally), Ferm, McSweeney & Collier, Ellsworth, for defendant.

Before ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

WATHEN, Justice.

Defendant Eugene Eaton appeals three convictions for dragging in the Frenchboro cable area, 12 M.R.S.A. § 6954–A (Supp. 1989), following a nonjury trial in Superior Court (Hancock County, Alexander, J.). On appeal, defendant challenges the constitutionality of the statute, the denial of his motion to suppress certain evidence and the sufficiency of the evidence supporting his convictions. Finding no error, we affirm the convictions.

Defendant was convicted of taking scallops or operating a motorcraft while towing a drag in the Frenchboro cable area[1] on three separate occasions: December 12, 1986, December 22, 1986 and January 14, 1987.[2] The State's case was based largely on the testimony of Marine Patrol Officers Dwinal Smith and Jonathan Cornish. At

---

1. Section 6954–A reads in relevant part as follows:

   **1. Violation.** It is unlawful to take scallops by any means or to operate any watercraft when towing a drag or trawl within the following area: Starting at the easternmost point on Red Point, Swan's Island; thence in an easterly direction to the southernmost point of the western Sister's Island; thence in a southeasterly direction to the southernmost point of Crow Island; thence in a southerly direction to the northernmost point of Harbor Island, Frenchboro, Long Island; thence southerly to the state ferry terminal located on the eastern side of Lunt's Harbor, French-

boro, Long Island, and then starting at the westernmost point of Gooseberry Point on Frenchboro, Long Island; westerly to the northeast point of John's Island; thence northwest to the easternmost point of the largest of the Baker Islands; thence northwesterly to the northeastern point of Harbor Island, Swan's Island; thence northerly to Quarry Wharf, Minturn, Swan's Island.
   12 M.R.S.A. § 6954–A (Supp.1989).

2. Each incident was originally the subject of a separate complaint. The cases were consolidated for hearing on defendant's pre-trial motions and for trial.

the suppression hearing, Officer Smith testified that near midday on December 12 he responded to a complaint of scalloping in the Frenchboro cable area. Using a visual sighting, he located defendant's boat and determined that it was in the prohibited cable area. Officer Smith confirmed his visual sighting by use of a LORAN system in combination with a compass and the variable range finder on his boat's radar system.[3] Using binoculars to monitor defendant's activity, Officer Smith noted that defendant's boat was moving "in a circular pattern ... indicative of scalloping" and further observed defendant pull scallop drags up onto his boat. Officers Smith and Cornish then boarded defendant's boat and observed scallops on board.

Officer Cornish testified about the December 22 incident and a subsequent conversation he had with defendant on December 23. Around 5:00 a.m. on the morning of December 22, Officer Cornish and two fellow officers, using a spotlight, observed defendant's boat with the drag line in the water inside the Frenchboro cable area. Because the officers pursued other boats engaged in illegal dragging, however, they did not stop defendant at that time. On December 23, Officer Cornish went to defendant's residence in uniform to issue defendant a summons. Defendant invited him in. Before issuing the summons, Officer Cornish spoke with defendant about the incident. Defendant admitted he was in the prohibited area but claimed his line was down as an anchor and that he was waiting for daylight to drag. Despite these statements, Officer Cornish issued the summons. The entire visit lasted "approximately twenty minutes."

Officer Smith testified that near mid-morning on January 14 he positioned himself on shore roughly 100 yards west of the easternmost point of Red Point. From this vantage point, he could see 98% of the prohibited area. Officer Smith observed defendant's boat heading in a southeasterly

direction with its drag line in the water, in excess of one-half mile inside the prohibited area. Defendant's boat then turned back in a northerly direction until it was roughly on the perimeter of the prohibited area, then pulled up its drags. Based on these observations, Officer Smith alerted other patrol boats by telephone and the Coast Guard stopped defendant's boat. When an hour later Officer Smith boarded defendant's boat, he observed scallops shucked and unshucked on board.

Prior to trial, defendant moved to dismiss the complaints, arguing that section 6954–A is unconstitutional. The motion justice denied defendant's motion to dismiss, but held that because the statute was silent respecting the water level at which the boundaries of the prohibited area are to be determined, defendant was entitled to the construction that prohibits dragging in the smallest area. Defendant next moved to suppress: 1) evidence of the two stops on the ground that there was no articulable suspicion; and 2) defendant's December 23 statements on the ground that they were not voluntary. The motion justice denied defendant's motion. At trial, defendant moved for a judgment of acquittal at the conclusion of the State's case. The trial justice denied defendant's motion. Defendant now appeals the above rulings.

### I.

Defendant's motion to dismiss was based on four theories: 1) section 6954–A is invalid emergency legislation; 2) section 6954–A is unconstitutionally vague; 3) section 6954–A is an unconstitutional exercise of the State's police power; and 4) section 6954–A is violative of equal protection. With respect to section 6954–A's status as emergency legislation, the motion justice held that the statute's preamble contained facts sufficient to satisfy the requirements of the Maine Constitution, *see Maine Const.* art. IV, pt. 3 § 16. With respect to

---

**3.** LORAN stands for "Long Range Aid to Navigation." The device enables a boat equipped with a LORAN receiver to determine its exact location through the use of radio signals sent from fixed points on the mainland. Using LORAN to determine the position of his patrol boat, Officer Smith then used his radar's variable range finder, along with a compass, to determine the precise location of defendant's boat.

defendant's second argument, the motion justice held that the fact that the statute is silent regarding the water level at which the boundaries are to be determined does not render the statute unconstitutional. Regarding defendant's third argument, the motion justice held that the fact that the prohibited area is larger than the area in which the cable lay does not constitute an unreasonable exercise of the State's police power because a rational relationship exists between the prohibited area and the protection of the cable. Finally, the motion justice ruled that section 6954-A does not violate equal protection because the statute's distinction between fishermen who drag for their catch and those who do not is rational.

■■■ Section 6954-A was enacted as emergency legislation and approved by the Governor on December 5, 1986. The emergency preamble provides in relevant part as follows:

> Whereas, current statutes do not provide for immediate and effective law enforcement; and
>
> Whereas, the current description of the prohibited area is incorrect;[4] and
>
> Whereas, the clear intent of the law is being violated by repeated dragging in cable areas; and
>
> Whereas, the health and safety of island residents is placed in jeopardy by the repeated dragging in cable areas in the face of the unenforceability of the statutes; and
>
> Whereas, in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety. . . .

L.D. 3, Preamble (113th Legis.1986).

While the general rule is that legislative acts become law 90 days after the recess of the Legislature in which they were passed, *see Maine Const.* art. IV, pt. 3 § 16, the Maine Constitution provides that emergency measures necessary for the preservation of public peace, health and safety become effective as soon as they are approved by the Governor. *Id.* In *Maine Milk Comm'n. v. Cumberland Farms,* 160 Me. 366, 205 A.2d 146 (1964), *appeal dismissed* 380 U.S. 521, 85 S.Ct. 1333, 14 L.Ed.2d 266 (1965), we explained that "[i]n the absence of evidence to the contrary this Court will take the statements in the preamble of legislative acts to be true, and will not substitute its judgment for that of the Legislature." *Id.* 160 Me. at 380, 205 A.2d at 153. Accordingly, while the preamble does not explicitly provide that the danger to be avoided is the loss of electricity to island residents in the event the cable is broken, such a legislative judgment is implicit and is therefore entitled to deference.

■■■ With respect to defendant's void for vagueness argument, we have held that "'[l]egislation should not be held invalid on the ground of uncertainty, if susceptible of any reasonable construction that will support it.'" *State v. S.S. Kresge, Inc.,* 364 A.2d 868, 872 (Me.1976), quoting *State v. Davenport,* 326 A.2d 1, 6 (Me.1974). *See also Shapiro Bros. Shoe Co., Inc. v. Lewiston–Auburn S.P.A.,* 320 A.2d 247, 253–54 (Me.1974). Like other marine regulatory legislation, section 6954-A uses prominent landmarks to define the area closed to the prohibited activity. *See, e.g.,* 12 M.R.S.A. §§ 6254, 6439, 6439–A, 6571, 6723, 6724 & 6955 (1981 & Supp.1989). While defendant is correct in pointing out that the statute does not indicate whether the measurements are to be taken at the high or low water marks, that fact alone does not make section 6954-A unconstitutionally vague. The motion justice demonstrated that section 6954-A was susceptible of a reasonable construction by giving it one.

■■■ In *Danish Health Club v. Town of Kittery,* 562 A.2d 663 (Me.1989), we articulated the requirements of due process in the exercise of the State's police power as follows:

> 1. The *object* of the exercise must be to provide for the public welfare.

---

4. The previous version of the statute incorrectly designated "the westernmost point on Red Point" as a marking. Red Point is on the eastern side of Swan's Island.

2. The legislative *means* employed must be appropriate to the achievement of the ends sought.

3. The *manner of exercising* the power must not be unduly arbitrary or capricious.

*Id.* at 665 (emphasis in original). In order to successfully challenge the constitutionality of a statute on due process grounds, a party "must establish the complete absence of any state of facts that would support the need for its enactment." *Id.*, citing *Tisei v. Town of Ogunquit*, 491 A.2d 564, 569 (Me.1985). The emergency preamble provides that the purpose of section 6954–A is to protect the health and safety of island residents. While defendant is correct in pointing out that the prohibited area is larger than the length and width of the cable, that fact alone does not demonstrate that section 6954–A is arbitrary and capricious. Officer Smith testified at the hearing that the position of the cable is thought to fluctuate due to tides and boats dragging into it. Moreover, consideration of the topography indicates that the landmarks selected by the Legislature to define the prohibited area are appropriate given the location of the cable vis-a-vis the surrounding land bodies.

■ Defendant's equal protection argument is likewise lacking in merit. Defendant argues that by permitting lobstering and other forms of fishing not involving the use of a drag or trawl, the Legislature invidiously discriminated against scallopers. A party alleging that a legislative classification violates equal protection "must show 'by clear and irrefutable evidence its arbitrariness and irrationally discriminatory nature.'" *Jackson v. State*, 544 A.2d 291, 295 (Me.1988), *cert. den'd*, — U.S. —, 109 S.Ct. 3185, 105 L.Ed.2d 694 (1989). No such showing has been made in this case.

## II.

In denying defendant's motion to suppress the December 12 and January 14 stops, the motion justice made the following findings on the record:

... I'm satisfied that based on the observations of the line and the angle that the line was in the water, the elliptical nature of the progress of the vessel, the actual eyeballing of the defendant and the scallops on the boat prior to the time that [defendant's boat] was boarded, the fact that the officer from a relatively short distance away was able to actually see the scallops brought up on [defendant's boat] and identify the fact that they were scallops ... I'm satisfied that that evidence was sufficient to raise the evidence to a level which articulable suspicion has been proven for purposes of making a stop.

On appeal, defendant argues that the motion justice's finding that there was an articulable suspicion for both stops was erroneous. *See State v. Garland*, 482 A.2d 139, 142 (Me.1984) (fourth amendment requires that police have an articulable suspicion that criminal conduct has occurred, is occurring, or imminently will occur in order to make a stop). With respect to the December 12 stop, defendant contends that Officer Smith placed defendant's boat in the prohibited area by visual observations only; regarding the January 14 stop, defendant argues that Officer Smith "claimed to have observed from a distance of half a mile the position and angle of a cable less than an inch in diameter on the opposite side of a vessel from the Officer, on rolling seas."

■ Defendant's argument is without merit. "The weight of the evidence and the determination of witness credibility are factors within the exclusive province of the trier of fact." *State v. Reardon*, 486 A.2d 112, 119 (Me.1984). At the suppression hearing, Officer Smith testified that on December 12 he determined that defendant's boat was in the prohibited area by using the LORAN system, the variable range finder and a compass. Officer Smith also testified that on January 14 he had 98% visibility of the prohibited area and that defendant's boat was within 200 yards when he brought his drags up. Defendant produced no evidence to the contrary. On the basis of Officer Smith's testimony alone, the motion justice was justified in

finding that there was an articulable suspicion for both stops.

 Defendant also challenges the motion justice's denial of his motion to suppress the statements to Officer Cornish on December 23. In reaching his decision, the motion justice explained that while it may have been better practice for Officer Cornish to have served defendant at the outset, his failure to do so did not render defendant's statements involuntary. Contrary to defendant's contentions, the motion justice's ruling was correct. In *State v. Mikulewicz,* 462 A.2d 497 (Me.1983), we explained that "[a] confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all of the circumstances its admission would be fundamentally fair." *Id.* at 501. Officer Cornish testified that defendant invited him in, that the conversation was friendly and that it lasted approximately twenty minutes. Defendant produced no evidence to the contrary.

### III.

In denying defendant's motion to dismiss, the motion justice ruled that defendant was entitled to the construction of section 6954–A that resulted in the smallest prohibited area; thus, the boundaries were to be determined at low tide. On appeal, defendant argues that in each instance the State failed to establish that defendant was in the prohibited area as determined at low tide and therefore his motion for judgment of acquittal should have been granted.

 The standard for determining whether there was sufficient evidence to support a conviction "is whether, based on that evidence viewed in the light most favorable to the prosecution, any trier of fact rationally could find beyond a reasonable doubt every element of the offense charged." *State v. Barry,* 495 A.2d 825, 826 (Me.1985). Officer Smith testified that on December 12 defendant's boat was "approximately two-tenths of a nautical mile" inside the prohibited area; on December 22, defendant's boat was "[a]pproximately three quarters of a mile" inside the prohib-

ited area; and on January 14, "at least a half mile into the cable area and possibly as much as three-quarters." While it is true that there was no direct testimony regarding the water level at which such determinations were made, the depth readings on the nautical chart that the State entered in evidence support the conclusion that the effect of tidal fluctuations on the determination of the boundary fixed by section 6954–A is less than the above distances. Accordingly, the evidence is sufficient to support defendant's convictions.

The entry is:

Judgments affirmed.

All concurring.