STATE OF MAINE
PENOBSCOT, SS.

FILED & ENTERED
SUPERIOR COURT

NOV 03 2005

PENOBSCOT COUNTY

SUPERIOR COURT
Docket No. CV-05-262

/ ....



GLEN ROSS, Penobscot County
Sheriff.,

          Plaintiff     )
                    )
                    )
                    )    **ORDER ON MOTION TO DISOLVE**
                    )    **TEMPORARY RESTRAINING ORDER**
      v.               )
                    )
                    )

JAMES EMERSON,
          Defendant.

The Defendant moves to dissolve the *ex parte* Temporary Restraining Order issued by this court on October 28, 2005. At the hearing held on the date noted below, the parties agree that the current record consists only of the affidavit submitted in support of the TRO. The parties also agreed to the following stipulation:

> The Defendant was transported to the hospital by Sheriff's Office personnel for the purpose of obtaining the forced nutrition as noted in the October 28, 2005, Order shortly after its issuance. However, the hospital refused to administer the forced nutrition because the Defendant did not meet, in the opinion of the hospital officials, their criteria for such intervention. The Defendant was returned to the Penobscot County Jail without treatment.

The Defendant attended the November 3, 2005, hearing and did not speak, but was observed by the court to be notably pale and withdrawn. His affect was unremarkable.

The Defendant does not focus upon the merits of the underlying issues, but challenges the sufficiency of the affidavit to established the elements necessary for the issuance of a temporary restraining order. Indeed, both parties welcome the full inquiry into the facts of the matter which would be afforded by the hearing on preliminary injunction which ordinarily would occur next in these proceedings.

The prerequisites for the issuance of injunctive relief are well established. As provided in Rule 65(a) and annunciated in the case of <u>Danish Health Club, Inc. v. Town of Kittery</u>, 562 A. 2d 663 (Me. 1989), the proponent of *ex parte* injunctive relief has the burden of demonstrating: (1) that plaintiff will suffer irreparable injury if the injunction is not granted, (2) such injury outweighs any harm which granting the injunctive relief would inflict on the defendant, (3) plaintiff has exhibited a likelihood of success on the merits (at most, a probability; at least, a substantial possibility), and (4) the public interest will not be adversely affected by granting the injunction.

The Defendant argues that one or more of these elements is notably missing from the affidavit which the Plaintiff submitted in support of his request. For example, the Defendant points out that the affiant never expressly states that the Plaintiff will suffer irreparable harm if the injunction is not granted. While this statement is superficially correct, Defendant fails to acknowledge that the court may draw reasonable inferences from the facts asserted in the affidavit when undertaking the Rule 65(a) analysis.

As an example, the affidavit states that the Defendant told the affiant that he was undertaking a hunger strike because he had nothing to lose. See Affidavit of Alfred Cichon at paragraph 12. From the four corners of these facts, the court infers that the Defendant is refusing to take life-sustaining sustenance as a result of a sense of hopelessness. The court further infers that the inevitable end result of such a course of action would be the Defendant's death unless some intervention occurs.

The court addresses the Rule 65(a) criteria as follows:

## 1. Irreparable harm

The Defendant argues that the hunger strike, if carried to its ultimate conclusion, will result in the his death, not the Plaintiff's. Upon this analysis, the Defendant argues, no harm befalls the Plaintiff.

His argument ignores the unique responsibilities which the law imposes upon the Plaintiff. As Sheriff, the Plaintiff is charged with the obligation to take reasonable measures to maintain the wellbeing of individuals in his custody. It matters not whether the individual is being held after being convicted of a crime, before conviction, or upon some civil process – the duty applies across the board. While the law imposes no duty upon a private citizen to intervene in a suicide attempt by a person in his or her presence, the Sheriff has no such luxury of inaction regarding his inmates.

The Sheriff cannot – by law – turn a blind eye to circumstances within his knowledge which threaten the wellbeing of individuals in his custody. This applies equally to circumstances which such individuals bring on themselves. If an overt threat of suicide is brought to his attention, the Sheriff must take reasonable measures to prevent the inmate from following through on his threat. In the instant matter, the Sheriff has concluded, and the court agrees, that the Defendant's stated intention to discontinue life-sustaining sustenance constitutes a suicide threat.

If the Sheriff fails to take reasonable steps to intervene after he is aware that a suicide attempt is being undertaken, he fails to discharge his constitutional duties. Among a host of repercussions is the fact that he (and the county) would be

immediately liable in a civil wrongful death action.[1] As death is undeniably final, the harm is irreparable. The first of the Rule 65(a) criteria is clearly met by this circumstance.[2]

## 2. Injury outweighs harm.

None of the parties minimize the invasive nature of an intravenous needle and a naso-gastric tube. Both involve painful and unpleasant intrusions into the body. Although no long term adverse effects of these interventions are suggested by either party, the court is satisfied that they constitute "harm" in the legal context.[3]

However, when the court weighs the injury to the Plaintiff (a presumptively valid wrongful death claim and the ramifications of a failure to discharge constitutional duties) against the harm to the Defendant (unpleasant medical procedures), the court resolves the issue in favor of the Plaintiff – the injury to the Plaintiff outweighs the harm to the Defendant.

## 3. Likelihood of success.

Although this appears to be a case of first impression in the State of Maine, it has been well explored in other jurisdictions and a fairly significant body of law exists on the subject. After reviewing the law (particularly an extremely similar matter decided by the New Hampshire Supreme Court in 1984),[4] the court is quite persuaded by the reasoning of the decisions which consistently hold that forced nutrition is appropriate relief. The Plaintiff will presumably succeed upon the Complaint.

## 4. Public interest.

The public interest is not adversely affected – indeed it is well served – by a public official undertaking a course of action to prevent self-harming behaviors undertaken by a person in his custody. On a more practical level, the public interest is not adversely affected – again it is well served – by a public official taking steps to

---

[1] Although the court does not reach this issue, some legal scholars may argue that a Sheriff could be criminally liable for a homicide crime if he is considered to be complicit in an inmate's suicide efforts.

[2] Courts which have reviewed similar situations have concluded that the extraordinary steps which jails and prisons must take when confronted by hunger strikes also constitute harm. Also, if one prisoner is able to subvert the legal or institutional process, there is a significant possibility that the practice will be duplicated by other prisoners to the point where the orderly operation of the facility is impossible. This prospect constitutes another type of prospective harm which cannot be ignored.

[3] As these procedures would be taken over the Defendant's objection, they would constitute assault as defined in the civil and criminal law absent any immunity authorized by the court.

[4] See In re Joel Caulk, 480 A.2d 93 (N.H. 1984).

discharge his constitutional duties and thus avoid financial liability for any failure to do so.

The Defendant argues that the public has an interest in avoiding intrusive procedures undertaken by public officials. He offers the example of routine strip searches by law enforcement officers. However, strip searches are not analogous in any manner to the circumstances before the court. Courts which have reviewed situations analogous to the case at bar find no violation of constitutionally guaranteed rights by imposing forced nutrition. As such no public interest is adversely affected by the injunctive relief sought in the instant matter.

## CONCLUSION

As before, the court is satisfied that injunctive relief is appropriate upon these circumstances. While it is difficult to precisely determine the urgency of the necessity of forced nutrition,[5] the court remains convinced that the standing order must continue: the Defendant is ordered to submit to the forced nutrition, the forced nutrition must be undertaken in the least intrusive manner available, and any party administering the nutrition is immune to civil or criminal responsibility for their efforts in such regard.

As noted by the parties, this Order does not require any medical provider to act in any particular manner (although their actions are subject to court imposed immunity). The court amplifies its earlier Order to provide that Defendant needs to submit only to forced nutrition which is administered at a recognized hospital or fully equipped medical facility by personnel who routinely administer intravenous needles and naso-gastric tubes. The court's earlier Order otherwise remains in full force and effect.

The matter will be set for an evidentiary hearing on a preliminary injunction as soon as the parties can be ready for such a hearing. Presumably medical testimony will be offered at such a hearing. The Clerk will communicate with the parties to arrange a mutually convenient time and date for the hearing.

The Clerk may incorporate this Order upon the docket by reference.

Dated: November 3, 2005

Andrew M. Mead
JUSTICE, MAINE SUPERIOR COURT

---

[5] The earlier Order was issued upon an emergent *ex parte* basis upon the perception of the court (drawn from inferences from allegations of the affidavit) that harm was imminent. The Defendant's attorney's assertions that harm is not imminent because the hospital declined to administer forced nutrition and the Defendant appeared to be functioning adequately in court are unavailing. In the absence of greater medical detail, the court continues to consider that harm is imminent.

GLENN ROSS VS JAMES EMERSON
UTN:AOCSsr  -2005-0110046                      CASE #:BANSC-CV-2005-00262
----------------------------------------------------------------------------
GLENN ROSS                                                    PL
ATTY MALLONEE, BRUCE  Tel# (207) 947-4501
ATTY ADDR:84 HARLOW ST PO BOX 1401 BANGOR ME 04402-1401
ATTY BUDD, CHARLES F.   Tel# (207) 947-4501
ATTY ADDR:84 HARLOW ST PO BOX 1401 BANGOR ME 04402-1401

JAMES EMERSON                                                 DEF
ATTY THISTLE, DALE F.   Tel# (207) 368-7755
ATTY ADDR:PO BOX 160 NEWPORT ME 04953-0160


M=More, Space = Exit:M

Select the EXIT KEY for page selection line.