STATE OF MAINE                                   SUPERIOR COURT
CUMBERLAND, ss.                          STATE OF MAINE CIVIL ACTION
                               Cum... ... ...k: DOCKET NO. AP-07-71
                                 ... ... COURT ... CV ...

TOWN OF BRUNSWICK,                          ... 2, 2007

              Plaintiff
                                         RECEIVED

              and                             ORDER ON PLAINITFF'S
                                              AND INTERVENORS'
                                              MOTIONS FOR
NEW ENGLAND ORGANICS, et al.,                 SUMMARY JUDGMENT

              Intervenors

       v.

THE KATAHDIN CENTER FOR                  DONALD L. GARBRECHT
EDUCATION AND RESEARCH,                   LAW LIBRARY

              Defendant                  AUG 20 2007

Before the Court are Plaintiff Town of Brunswick's ("Town") and Intervenors New England Organics, Maine Waste Water Control Association, Lewiston-Auburn Water Pollution Control Association and Bruce Nicholson's ("Intervenors") motions for summary judgment on their complaint against Defendant the Katahdin Center for Education and Research ("Defendant").

## UNDISPUTED FACTS

On November 6, 2006, Town voters approved an initiative proposal put forward by members of Defendant's organization. (S.M.F. ¶¶ 1 & 2.) Based on this vote, the Brunswick Community Health and Land Care Ordinance ("Ordinance") will go into effect on November 17, 2007. (S.M.F. ¶ 2.) In part, the Ordinance bans sludge-derived products such as Class A composted biosolids on lands owned by the Town and maintained by the Town's Parks and Recreation Department. (S.M.F. ¶ 3, Ordinance § II.)

1

## DISCUSSION

Plaintiff's and Intervenors' motions for summary judgment present the following question of law: Is the Ordinance preempted by State law to the extent it bans the use of Class A biosolids on all land owned or leased by the Town and managed by the Town's Parks and Recreation Department, including outdoor grounds such as parks, playing fields, conservation and open space?

Maine's "Home Rule" statute authorizes a municipality to "exercise any power or function which the Legislature has power to confer upon it, which is not denied either expressly or by clear implication . . . ." 30-A M.R.S.A. § 3001. As a corollary to this broad authority, however, "'if the legislature intended to create a comprehensive and exclusive regulatory scheme, then [a] municipal ordinance [at odds with that scheme] must fail as a violation of the Home Rule statute.'" *Midcoast Disposal, Inc. v. Town of Union*, 537 A.2d 1149, 1150 (Me. 1988) (quoting *Tisei v. Town of Ogunquit*, 491 A.2d 564, 570 (Me. 1985)). The Law Court has recognized The Maine Hazardous Waste, Septage and Solid Waste Management Act ("Act"), 38 M.R.S.A. §§ 1301 – 1319-Y, as just such a "comprehensive and exclusive regulatory scheme." *Midcoast Disposal, Inc.*, 537 A.2d at 1151. Therefore, the Ordinance could be preempted either expressly, if it is at odds with any specific provision of the Act, or impliedly, if the Ordinance would frustrate a purpose of the Act's overall scheme.

The Act, by its explicit provision, "declares it to be the policy of the State . . . to establish a coordinated statewide waste reduction, recycling and management program." 38 M.R.S.A. § 1302. The solid waste management priorities of the Act include the reuse of waste. 38 M.R.S.A. § 2101. Further, the Legislature provided that the Department of Environmental Protection ("DEP")

2

"may adopt, amend and enforce rules as it deems necessary to govern waste management" that are consistent with the Act. 38 M.R.S.A. § 1304. The Act also provides that "municipalities, except as provided in this section, may enact ordinances with respect to *solid waste facilities* that contain standards the municipality finds reasonable . . . provided that the standards are not more strict than those contained in this chapter . . . and the rules adopted under these articles." 38 M.R.S.A. § 1310-U (emphasis added). Therefore, a threshold issue is whether the outdoor grounds upon which the Town spreads sludge-derived Class A composted biosolids are "solid waste facilities" within the meaning of the Act.

Although the common usage of the term "solid waste facility" may not encompass locations like parks and playing fields, the Definitions section of the Act, 38 M.R.S.A. § 1303-C, creates a number of terms of art relevant to the issue at hand. First, "solid waste facility" is defined by the Act to mean "a waste facility used for the handling of solid waste . . .[1]" with a number of listed exceptions that are irrelevant to this case. 38 M.R.S.A. § 1303-C(31). Within that definition, "waste facility," "handling" and "solid waste" are all separately defined as terms of art under 38 M.R.S.A. § 1303-C.

"Waste facility" is defined in relevant part as "any land area . . . used for handling . . . sludge . . . ." 38 M.R.S.A. § 1303-C(40). "Handle," in turn, "means to . . . dispose of." 38 M.R.S.A. § 1303-C(14). Finally, "Disposal" means the "placing of . . . solid waste, . . . into or on land . . . so that the . . . sludge . . . or a constituent

---

[1] Defendant makes no argument that the sludge at issue is not "solid waste." In any event, DEP Rules explicitly describe sludge as "special waste." Me. Dep't of Envtl. Prot., 06 096 CMR 400-1. "Special waste," in turn, is defined as "any *solid waste* . . . that may disrupt or impair effective waste management or threaten the public health . . . ." *Id.* (emphasis added).

of the . . . sludge . . . may enter the environment . . . ." 38 M.R.S.A. § 1303-C(12).

Therefore, the definition for "solid waste facility" can be rephrased as "any land area used for the placing of sludge on land so that it may enter the environment."

Defendant argues that a plain reading of the Act and its definitions leads inexorably to the conclusion that fields do not become "solid waste facilities" merely by virtue of the Town spreading sludge. Ironically, the opposite is true. Although perhaps at odds with the common meaning of "solid waste facility," by a plain reading of the definitions provided by 38 M.R.S.A. § 1303-C, such locations become "solid waste facilities" under the Act upon the spreading of sludge so that the sludge or its constituents may enter the environment.

Because of the above conclusion, it is clear that the Ordinance provision banning the application of sludge and sludge-derivatives to Town owned and administered fields is expressly preempted by the Act. 38 M.R.S.A. § 1310-U explicitly states that municipalities may only enact ordinances with respect to solid waste facilities that are no stricter than those provided by the Act and the DEP's Rules adopted pursuant to the Act. Because neither the Act nor the DEP's Rules dictate a blanket ban on the application of sludge to land at "solid waste facilities," the Ordinance is stricter than either the Act or the DEP's Rules. This violation of the Act renders the Ordinance provision in question expressly preempted. As such, there is no need to reach the issue of implied preemption.

Therefore, the entry is:

> The Town's and Intervenors' motions for summary judgment are GRANTED. The Ordinance provision banning the use or application of sludge or sludge-derived products to all Town owned and administered land is preempted by 38 M.R.S.A. § 1310-

4

U and therefore unenforceable. Judgment for the Town and Intervenors.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this _24th_ day of _May_, 2007.

Robert E. Crowley
Justice, Superior Court

CLIFFORD GOODALL ESQ
DYER GOODALL & FEDERLE
61 WINTHROP ST
AUGUSTA ME 04330

GEOFFREY HOLE ESQ
BERNSTEIN SHUR SAWYER & NELSON
PO BOX 9729
PORTLAND ME 04104-5029

CATHERINE CONNORS ESQ
PIERCE ATWOOD
ONE MONUMENT SQUARE
PORTLAND ME 04101