1997 ME 82

**Fred I. BEALE, et al.**

v.

**SECRETARY OF STATE.**

Supreme Judicial Court of Maine.

Argued March 6, 1997.

Decided April 18, 1997.

Kristen L. Aiello (orally), Law Offices of P.J. Perrino, Jr., Augusta, for Fred Beale.

Paul B. Watson (orally), North Windham, for Llewellyn Verrill.

Andrew Ketterer, Attorney General, Joseph Wannemacher, Asst. Atty. Gen. (orally), Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Fred Beale and Llewellyn Verrill appeal from judgments entered in the Superior Court (Kennebec County, Alexander, J.),

affirming the suspensions of their licenses to operate a motor vehicle that were administratively imposed by the Secretary of State. On appeal they challenge the constitutionality of the June 29, 1995, effective date of certain sections of P.L.1995, ch. 368, § AAA.[1] They contend that the portions of the statute dealing with operating motor vehicles while under the influence of intoxicants or with excessive amounts of alcohol in the blood, pursuant to which their licenses were administratively suspended, should not apply to them because the statutes were not in effect on July 1, 1995, the date on which Beale and Verrill operated motor vehicles while under the influence of intoxicants. They argue that those provisions, enacted as part of P.L.1995, ch. 368 as emergency legislation effective June 29, 1995, are not emergency provisions because they are not related to the emergency recited in the preamble.[2] Accordingly, they argue that the provisions did not become effective until September 29, 1995. We disagree and affirm the judgments.

[¶ 2] Beale was charged with operating a motor vehicle while under the influence of alcohol (Class D) in violation of 29-A M.R.S.A. § 2411(1) (1996), on July 1, 1995. On March 1, 1996, Beale pleaded guilty to the charge, and the court subsequently ordered his license suspended for ninety days, imposed a $350 fine, and incarcerated him for forty-eight hours. The record reveals that Beale had been convicted twice in November of 1986 for operating under the influence of intoxicants. In addition, he had one adminis-

trative suspension in 1990 for his refusal to take a chemical test. Sometime after March 8, 1996, the Secretary of State administratively suspended Beale's license for six years to run consecutive to an eighteen-month suspension for his refusal to take a chemical test on the date of the crime. *See* 29-A M.R.S.A. §§ 2451(3), (4) (1996). Pursuant to the law as amended, the two previous convictions, because they were within ten years of the date of Beale's present conviction, were utilized in determining the period of suspension. Pursuant to the prior law containing only a six-year look back period, these previous convictions would not have been considered. Following the denial of his request for an administrative hearing on the six-year suspension by the Secretary of State, Beale sought review by the Superior Court pursuant to 29-A M.R.S.A. § 2485(5) (1996), and M.R.Civ.P. 80C.

[¶ 3] Verrill's motor vehicle license was administratively suspended for an eighteen-month period, beginning September 24, 1995, based on his operation of a motor vehicle with an excessive level of blood alcohol on July 1, 1995. Verrill had one previous conviction for operating under the influence that occurred on June 24, 1987, within ten years of the suspension of Verrill's license; thus, this offense is a second offense for suspension purposes pursuant to the new law. *See* 29-A M.R.S.A. § 2453(6) (1996). After his suspension was affirmed at an administrative hearing on November 8, 1995, Verrill sought

---

1. Section AAA of Chapter 368 amended portions of the law dealing with operating under the influence (OUI). *See* 29-A M.R.S.A. § 2402 (1996); 29-A M.R.S.A. § 2411(5) (1996); 29-A M.R.S.A. § 2451(3) (1996). The amended provisions increase the look-back period for prior convictions from six to ten years and also increase terms of imprisonment, and the fines and license suspension imposed. The law also increases suspensions imposed either upon an administrative finding of operating under the influence or upon certification of a conviction to the Secretary of State. *See* 29-A M.R.S.A. § 2453(6)(A) (1996) (noting that for an administrative determination of excess blood alcohol level, "the same suspension period applies as if the person were convicted of OUI.")

2. Article 4, part 3, section 16 of the Maine Constitution provides that no act shall take effect

until ninety days after the recess of the session "unless in case of emergency, which with the facts constituting the emergency shall be expressed in the preamble of the Act, the Legislature shall, by a vote of two thirds of all the members elected to each House, otherwise direct." The relevant portion of the preamble of the act at issue states:

> . . . . .
> *Whereas, certain obligations and expenses incident to the operation of state departments and institutions will become due and payable immediately;* and
> **Whereas,** in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety. . . .

(emphasis added).

review by the Superior Court. The court held a consolidated hearing for Beale and Verrill. This appeal followed the court's affirmance of their suspensions.

[¶ 4] Beale and Verrill contend that the statutory changes relating to license suspensions were enacted unconstitutionally as emergency legislation. They contend that the OUI portions of the Act were not enacted as a result of any emergency and are unrelated to the appropriations bill in which they were passed. Therefore, they argue, the OUI provisions should not be deemed effective until September 29, 1995. Accordingly, they contend that because they operated a motor vehicle under the influence of intoxicants or with excessive blood alcohol on July 1, 1995, within the ninety-day period of the enactment of Chapter 368, Part AAA, the length of their suspensions must be determined based on the prior law.

■ [¶ 5] In examining the sufficiency of the preamble, we have said that

> the question of whether [ ] the Legislature has *expressed* (to wit, made an allegation of) *a fact or facts* is a question of law. Whether [ ] such fact or facts *can constitute an emergency* within the meaning of the Constitution is likewise a question of law. These questions of law may be reviewed by this [C]ourt. On the other hand, whether [ ] a fact expressed as existing, does exist, is a question of fact and not of law. It is likewise a question of fact whether [ ] an expressed fact which can constitute an emergency, does constitute an emergency.

*Morris v. Goss,* 147 Me. 89, 98–99, 83 A.2d 556, 561 (1951). Questions of fact are within the exclusive prerogative of the Legislature. *Id; see also Maine Milk Comm'n v. Cumberland Farms Northern, Inc.,* 160 Me. 366, 380, 205 A.2d 146, 153 (1964), *appeal dismissed,* 380 U.S. 521, 85 S.Ct. 1333, 14 L.Ed.2d 266 (1965) (absent contrary evidence, statements in preamble of the legislative act are deemed true and court will not substitute its judgment for that of legislature). These authorities demonstrate that we grant substantial deference to the Legislature in this area.

[¶ 6] Article 4, part 3, section 16 provides that in order for an act to be an emergency measure and become effective immediately the "facts constituting the emergency shall be expressed in the preamble of the Act...."[3] We have not required that the preamble contain a litany of detail in order for the emergency measure to comply with section 16. In *Morris v. Goss,* we concluded that an act imposing a sales and use tax was an emergency measure when the preamble stated that "the essential needs of state government require that additional revenue be raised by this legislature[.]" *Morris v. Goss,* 147 Me. at 101, 83 A.2d at 562. In responding to the argument that the preamble was conclusory and did not state facts, we stated that the "constitutional requirement is satisfied by the expression in the preamble of an ultimate fact or facts which constitute an emergency without a recital of all of the separate facts evidencing the existence of such ultimate fact," *Id.* at 102, 83 A.2d at 563, and that

> [t]he only logical alternative to the use of [a] broad general statement [stating the nature of the emergency] ... would be to set forth in the emergency preamble of an act to raise revenue the entire budget of the State of Maine which was to be met either in whole or in part by the tax imposed, together with a recital of the then existing revenues available to meet the same.

*Id.* at 101, 83 A.2d at 563; *see also State v. Eaton,* 577 A.2d 1162, 1165 (Me.1990) (act lawfully enacted as emergency legislation regarding the taking of scallops within a cable area when preamble recited that the health and safety of island residents was placed in jeopardy); *In re Opinion of the Justices,* 153 Me. 469, 474, 145 A.2d 250, 253 (1958) (opinion that emergency enactment of bill to organize school districts would be proper when preamble referred to essential nature of "safe and adequate facilities for such administrative units"). *Cf. Payne v. Graham,* 118 Me. 251, 256, 107 A. 709, 710–11 (1919) (language referring to the necessity of preserving the public health was insufficient to justify as emergency legislation an act to make

3. *See supra* note 2.

punishment for sexual crimes more stringent than prior law).

[¶ 7] In this case, the preamble declares the existence of a fiscal emergency and the immediate necessity of the legislation as a response to that emergency. The amendments to the OUI statute are revenue positive and include substantial increases in fines for violations of the OUI law. The amendments will directly result in increased revenue to the State, clearly contributing to resolving the problem the emergency preamble addresses. Other provisions of the amendments, such as increases in the length of terms of imprisonment and in the periods of suspension, although linked less directly to fiscal considerations, nevertheless are an integral part of the changes in the OUI law. They reflect a legislative determination that the operation of a motor vehicle while under the influence of intoxicants or with excessive blood alcohol is a more serious violation that requires increased jail time and longer periods of suspension as well as increased monetary fines. Beale and Verrill's challenges are to the suspension periods enacted as part of the new law. Section 16, however, does not require that each individual section of the amendments to the OUI law, enacted as an important part of an emergency fiscal bill, be examined separately for different effective dates as long as the OUI amendments generally are related to the stated preamble. Because the changes to the OUI laws were constitutionally enacted as part of emergency legislation, its provisions became effective June 29, 1995, were in effect on July 1, 1995, and validly apply to the administrative suspensions imposed on Beale and Verrill.

The entry is:

Judgments affirmed.