MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2025 ME 61
Docket:        Cum-24-421
Argued:        May 7, 2025
Decided:       July 10, 2025

Panel:         STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, DOUGLAS, and LIPEZ, JJ.

STATE OF MAINE

v.

TOWNSEND THORNDIKE

DOUGLAS, J.

[¶1]  Townsend Thorndike appeals from a judgment of conviction for unlawful sexual contact (Class A), 17-A M.R.S. § 255-A(1)(F-1) (2025),[1] and visual sexual aggression against a child (Class C), 17-A M.R.S. § 256(1)(B) (2025), entered by the trial court (Cumberland County, *J. French, J.*).  Thorndike contends that the court erred by admitting at trial a video recording of a forensic interview of the victim pursuant to the statutory exception in 16 M.R.S. § 358 (2024) to the hearsay rule.  He asserts specifically that an amendment to the statute that made it applicable in his trial was unconstitutionally enacted as

---

[1]  Although this statute was amended after the date of the charged crime, those amendments do not affect this appeal.  *See, e.g.*, P.L. 2023, ch. 280, §§ 3, 4 (effective Oct. 25, 2023) (codified at 17-A M.R.S. § 255-A(1)(A), (B) (2025)).

emergency legislation and violated the separation of powers clause in the Maine Constitution.  We disagree and affirm the judgment.

## I.  BACKGROUND

### A.    Proceedings in the Trial Court

[¶2]  The State filed a complaint on September 10, 2021, in Cumberland County, charging Thorndike with two counts of unlawful sexual contact and one count of visual sexual aggression against a child, based on alleged sexual abuse that occurred in summer 2021, when the victim was six years old.  Several months later, in November 2021, a grand jury indicted Thorndike on the same three charges.

[¶3]  In December 2023, the State moved in limine to enter in evidence a recording of the victim's forensic interview conducted on August 25, 2021, at the Cumberland County Children's Advocacy Center (CAC).  The motion was predicated on 16 M.R.S. § 358, which the Legislature had enacted six months earlier on June 16, 2023, "establish[ing] an exception to the hearsay rule under the Maine Rules of Evidence, Rule 802, for the recording of a forensic interview of a protected person" (defined as children and certain adults with disabilities)

provided certain criteria are met.[2] *See* P.L. 2023, ch. 193, § 1 (effective Oct. 25, 2023) (codified at 16 M.R.S. § 358(1), (3) (2024)).

[¶4] The court held a hearing on the State's motion on March 4, 2024. On March 12, 2024, the court granted the motion, finding that the State had satisfied the statutory criteria set out in 16 M.R.S. § 358, and therefore "the

---

[2] Section 358(3) requires that "[a] party seeking to offer all or a portion of a recording of a forensic interview of a protected person into evidence shall file a motion in limine." 16 M.R.S. § 358(3) (2025). The court "shall determine whether, in addition to satisfying all of the other requirements of this section, the following criteria have been met:

> **A.** The interview was conducted by a forensic interviewer;
>
> **B.** Statements made by the protected person during the forensic interview were not made in response to suggestive or leading questions;
>
> **C.** A relative of the protected person was not present in the room during the substantive phase of the interview;
>
> **D.** An attorney for any party in a proceeding with the protected person was not present in the room with the protected person during the interview;
>
> **E.** The recording is both visual and audio;
>
> **F.** The recording is a fair and accurate representation of the statements made by the protected person and has not been altered except for purposes of admissibility;
>
> **G.** In a criminal matter, the protected person is available to testify or be cross-examined by any party and is called as a witness by the party offering the recording in evidence immediately following the presentation of the recording to the trier of fact and made available for cross-examination, unless all other parties expressly waive the requirement that the witness testify; and
>
> **H.** The portion of the interview to be admitted in evidence is relevant pursuant to the Maine Rules of Evidence, Rule 401, and is not otherwise inadmissible under the Maine Rules of Evidence.

*Id.* § 358(3)(A)-(H).

recording of the forensic interview of the [victim falls within] an exception to the hearsay rule under the Maine Rules of Evidence, Rule 802."

[¶5]  Thorndike's trial was scheduled to begin on March 25, 2024. Several days prior to the start of trial, however, on March 21, 2024, the court *sua sponte* issued an order vacating its March 12 order.  The court concluded after further consideration that section 358 did not apply in Thorndike's trial "[b]ecause this action was pending when section 358 was enacted, and there is no language in the statute that refers to 1 M.R.S. § 302, or states an intent for the statute to apply retroactively to pending proceedings."[3]

[¶6]  The following day, the State filed an emergency motion to continue the trial, asserting that the court's eleventh-hour reversal of its prior order "<u>will</u> severely affect the [v]ictim's emotional state in preparing for this trial and the State must take the time to prepare the family for this change in course." Thorndike took no position on the motion.  The trial court granted the motion and continued the trial to the May docket call.

---

[3] Section 302 provides, in relevant part, that "[a]ctions and proceedings pending at the time of the passage, amendment or repeal of an Act or ordinance are not affected thereby."  1 M.R.S. § 302 (2025); *see also State v. Beeler*, 2022 ME 47, ¶ 1 n.1, 281 A.3d 637 ("In pending actions, the legislatively created rule of construction set forth in 1 M.R.S. § 302 [(2025)] applies. . . . [but] may be overcome . . . if the new legislation expressly cites section 302 or explicitly states an intent to apply to pending proceedings.").

[¶7]  Shortly after the court continued the trial, a bill was introduced in the Legislature to amend section 358 to clarify that it had been intended to operate retroactively and apply to cases pending at the time of enactment.  *See* Comm. Amend. A to L.D. 2290, No. H-982, Summary (131st Legis. 2024) ("[C]larif[ying] the intent of the Legislature that the exception to the hearsay rule for recordings of forensic interviews . . . applies to proceedings pending on the date that the law was enacted and to proceedings initiated after that date, regardless of when the conduct described in the forensic interview allegedly occurred.")  Effective April 22, 2024, the Legislature enacted, on an emergency basis, an amendment to section 358 that included express language stating that it applied to pending cases.  *See* P.L. 2023, ch. 646, § D-1 (emergency, effective Apr. 22, 2024) (codified at 16 M.R.S. § 358(5) (2025)).  *See infra* ¶¶ 13-16*.*

[¶8]  The State subsequently filed a motion for reconsideration of the trial court's March 21 order.  On May 6, 2024, the court granted the State's motion, "reinstat[ing] its original March 12, 2024 [o]rder and allow[ing] the admission of the CAC interview . . . at trial, as set forth in its order."  The court denied Thorndike's subsequent motion for reconsideration of the May 6 order.

[¶9]  The trial was held on June 25 and 26, 2024.  At the beginning of trial, the court stated its ruling on the record that the recorded video interview was

6

admissible under the hearsay exception in 16 M.R.S. § 358 as amended because it satisfied the statutory criteria, was relevant, and its probative value outweighed any risk of unfair prejudice.

[¶10] The State presented testimony from the victim, who was then eight years of age. The victim identified Thorndike and his relationship with the family, and briefly described some of his actions as well as disclosures made to the victim's mother and the forensic interviewer at the Children's Advocacy Center. The victim was permitted to leave the courtroom while the video was played for the jury and then returned for cross-examination. On cross-examination, the victim testified that she had not seen the video, could not remember everything she said during the interview, and could not remember everything Thorndike had done.

[¶11] The jury returned a verdict finding Thorndike guilty on all counts. At the sentencing hearing held in August 2024, the court merged Count 2 with Count 1,[4] entered a judgment of conviction on Counts 1 and 3, and sentenced

---

[4] Count 1 of the indictment charged that on or between July 1, 2021, and August 23, 2021, Thorndike, who was at least three years older than the victim, intentionally subjected the victim, a minor under twelve years of age, "to sexual contact [that] included penetration," in violation of 17-A M.R.S. § 255-A(1)(F-1) (2025). Count 2, which was based on the same incidents, charged that on or between the same dates, July 1, 2021, and August 23, 2021, Thorndike, who was at least three years older than the victim, intentionally subjected the victim, a minor under twelve years of age, "to sexual contact" in violation of 17-A M.R.S. § 255-A(1)(E-1) (2025).

Thorndike to (i) fourteen years of imprisonment, with all but eight years suspended, and six years of probation on Count 1 and (ii) five years on Count 3, concurrent with Count 1.

[¶12]  Thorndike timely appealed.  15 M.R.S. § 2115 (2025); M.R. App. P. 2B(2)(b)(1).

**B.      April 2024 Amendment to Section 358**

[¶13]   On April 9, 2024, in the Second Regular Session of the 131st Legislature, L.D. 2290 was introduced as an emergency omnibus errors and inconsistencies bill to address "acts of this and previous Legislatures [that] have resulted in certain technical inconsistencies, conflicts and errors in the laws of Maine."   L.D. 2290, Emergency Preamble (131st Legis. 2024).   As introduced, L.D. 2290 included over sixty amendments to various statutes in no fewer than seventeen titles of the Maine Revised Statutes.  *Id.*  Upon the bill's referral to the Judiciary Committee, an amendment was proposed to add a provision making 16 M.R.S. § 358 retroactively applicable to pending actions. Comm. Amend. A to L.D. 2290, No. H-982 (131st Legis. 2024).

[¶14]  At an April 10 committee hearing, Senator Carney, the legislator who had sponsored the original legislation enacting 16 M.R.S. § 358, *see* L.D. 765 (131st Legis. 2023), and who was now sponsoring the proposed committee

8

amendment to L.D. 2290, testified that the original intent in enacting the hearsay exception in 16 M.R.S. § 358 was that it would "apply to any case that was pending at the time the law went into effect." *See An Act to Correct Inconsistencies, Conflicts and Errors in the Laws of Maine: Hearing on L.D. 2290 Before the J. Standing Comm. on Judiciary*, 131st Legis. (2024) (oral testimony) [Committee Hearing on L.D 2290]. Specific language consistent with 1 M.R.S. § 302 (2025) was not included in the original bill due to a misunderstanding as to whether "[the legislation] needed to have a special applicability section." Committee Hearing on L.D 2290 (oral testimony). The proposed amendment was intended to correct this omission. It was "urgent" because conflicting court decisions demonstrated that there was confusion about the Legislature's intent, with the result that victims in ongoing cases that arose prior to the original statute's enactment may not have the opportunity to avoid or minimize the potential for re-traumatizing harm if called upon to be witnesses in criminal and civil cases.[5] Committee Hearing on L.D. 2290 (oral testimony).

---

[5] According to testimony offered at the committee hearing, there were at least four cases where the trial courts had considered, with mixed results, the question of whether section 358 applied to cases pending prior to its enactment. *See An Act to Correct Inconsistencies, Conflicts and Errors in the Laws of Maine: Hearing on L.D. 2290 Before the J. Standing Comm. on Judiciary*, 131st Legis. 56 (2024) (written testimony)*.*

[¶15]   The Maine Prosecutors Association submitted testimony in support of L.D. 2290.  Committee Hearing on L.D. 2290 at 56-57 (written testimony).  Others testified in favor of the proposed amendment as well, including several members of the victim's family in this case and individuals associated with at least one other pending case.  *See, e.g.*, Committee Hearing on L.D. 2290 at 52, 71-72 (written testimony).

[¶16]   On April 22, 2024, the Legislature enacted L.D. 2290, which included the proposed amendment to 16 M.R.S. § 358, adding a new subsection 5:

> **5. Applicability.**  Notwithstanding Title 1, section 302, this section applies to:
>
> A.  Cases pending on June 16, 2023; and
>
> B.  Cases initiated after June 16, 2023, regardless of the date on which conduct described in the forensic interview allegedly occurred.

P.L. 2023, ch. 646, § D-1 (emergency, effective Apr. 22, 2024).  The emergency preamble to Public Law 2023, chapter 646 provides:

> **Whereas,** acts and resolves of the Legislature do not become effective until 90 days after adjournment unless enacted as emergencies; and
>
> **Whereas,** acts of this and previous Legislatures have resulted in certain technical inconsistencies, conflicts and errors in the laws of Maine; and

**Whereas,** these inconsistencies, conflicts and errors create uncertainties and confusion in interpreting legislative intent; and

**Whereas,** it is vitally necessary that these uncertainties and this confusion be resolved in order to prevent any injustice or hardship to the citizens of Maine; and

**Whereas,** Public Law 2023, chapter 193, An Act to Establish an Exception to the Hearsay Rule for Forensic Interviews of a Protected Person, established an exception to the hearsay rule for the recordings of forensic interviews of minors and of certain adults with disabilities conducted at child advocacy centers, as long as specific due process protections are diligently followed; and

**Whereas,** trial courts across the State have reached disparate decisions regarding whether the Maine Revised Statutes, Title 1, section 302 affects whether Public Law 2023, chapter 193 applied to pending proceedings; and

**Whereas,** citizens of the State rely on the Legislature to enact statutes that will be interpreted consistently; and

**Whereas,** in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety. . . .

P.L. 2023, ch. 646, Emergency Preamble (emergency, effective Apr. 22, 2024).

## II.  DISCUSSION

### A.    Emergency Legislation

[¶17]   Thorndike contends that the emergency enactment of the amendment to 16 M.R.S. § 358 adding subsection 5 was an exercise of

legislative power in violation of article IV, part 3, section 16 of the Maine Constitution because the act's preamble "states no facts suggesting that legislation is 'immediately necessary for the preservation of public peace, health or safety.'" Consequently, he argues, section 358(5) did not take effect upon passage and became operative only as of the general effective date for Second Regular Session non-emergency laws, which was August 9, 2024, *see* 2023 Me. Laws I (2d Reg. Sess. of 131st Legis.), and therefore it was error for the court to admit the video recording of the forensic interview.

[¶18] We review questions of constitutional interpretation de novo and presume all enactments of the Legislature to be constitutional, resolving all reasonable doubts in favor of a statute's constitutionality. *Parker v. Dep't of Inland Fisheries & Wildlife*, 2024 ME 22, ¶ 18, 314 A.3d 208; *see also Me. Milk Comm'n v. Cumberland Farms N., Inc.*, 160 Me. 366, 378, 380, 205 A.2d 146, 152-153 (Me. 1964) (stating that "the presumption is one of great strength" and "the existence of facts supporting the legislative judgment is to be presumed"). Moreover, in this specific context, we have been careful to refrain from declaring emergency legislative action as violative of article IV, part 3, section 16 "except in those cases where such declaration is absolutely required." *Morris v. Goss*, 147 Me. 89, 93, 100, 83 A.2d 556, 562 (1951) (rejecting a

12

challenge to the sufficiency of an emergency preamble, noting that "every reasonable presumption will be made in favor of the constitutionality of an act enacted by the Legislature").

[¶19]  Article IV, part 3, section 16 of the Maine Constitution provides in relevant part as follows:

> No Act or joint resolution of the Legislature . . . shall take effect until 90 days after the recess of the session of the Legislature in which it was passed, unless in case of emergency, which with the facts constituting the emergency shall be expressed in the preamble of the Act, the Legislature shall, by a vote of 2/3 of all the members elected to each House, otherwise direct.  An emergency bill shall include only such measures as are immediately necessary for the preservation of the public peace, health or safety.

Me. Const. art. IV, pt. 3, § 16.  The Legislature enacted P.L. 2023, chapter 646 by a two-thirds vote.  Therefore, the issue here is whether (i) the facts constituting the emergency are "expressed in the preamble of the Act," and (ii) the subject of the legislation addresses matters "immediately necessary" to preserve "public peace, health or safety."  *Id.*

[¶20]  In evaluating the sufficiency of the preamble to support the legislative exercise of emergency power consistent with article IV, part 3, section 16, we have said that it is a question of law within our province to determine "whether or not the Legislature has *expressed* (to wit, made an allegation of) *a fact or facts*" in the preamble and whether those facts "*can

*constitute an emergency* within the meaning of the Constitution." *Morris*, 147 Me. at 98, 83 A.2d at 561. But it is a question of fact within the "exclusive province of the Legislature" as to "whether or not a fact expressed as existing, does exist" and "whether or not an expressed fact which can constitute an emergency, does constitute an emergency." *Id.* at 98-99, 83 A.2d at 561; *see also Me. Milk Comm'n*, 160 Me. at 380, 205 A.2d at 153 ("In the absence of evidence to the contrary this court will take the statements in the preamble of legislative acts to be true, and will not substitute its judgment for that of the Legislature.").

[¶21] Moreover, "[w]e have not required that the preamble contain a litany of detail in order for the emergency measure to comply with section 16." *Beale v. Sec'y of State*, 1997 ME 82, ¶ 6, 693 A.2d 336; *see also Morris*, 147 Me. at 102, 83 A.2d at 563 (concluding that the "constitutional requirement is satisfied by the expression in the preamble of an ultimate fact or facts which constitute an emergency without a recital of all of the separate facts evidencing the existence of such ultimate fact"). And, even in the absence of an explicit description of the emergency to be remedied, we may infer the nature of the emergency from the context of the preamble as a whole. *See State v. Eaton*, 577 A.2d 1162, 1165 (Me. 1990) (stating that "while the preamble does not

explicitly [identify the specific emergency] such a legislative judgment is implicit and is therefore entitled to deference").

[¶22]  Contrary to Thorndike's argument, the preamble to Public Law 2023, chapter 646 expresses sufficient facts to support the Legislature's judgment that emergency legislation was justified.  The preamble states that there were "errors" in laws previously enacted; those "errors" created "uncertainties and confusion" about the Legislature's intent; and correcting them was "vitally necessary" to "prevent any injustice or hardship to the citizens of Maine."  P.L. 2023, ch. 646, Emergency Preamble.  In addition, the preamble explicitly references Public Law 2023, chapter 193, which established the statutory hearsay exception, and identifies that the courts have reached "disparate decisions" resulting from uncertainty as to whether the statutory exception was intended to "appl[y] to pending proceedings."  *Id.*

[¶23]  We accept these facts as found by the Legislature and conclude that, taken together, they "can constitute an emergency."  *Morris*, 147 Me. at 102, 83 A.2d at 563.  The Legislature intended that section 358, as initially enacted, offer *all* alleged victims of sexual abuse an opportunity to avoid potential re-traumatization from having to testify at trial while also protecting the rights of an accused, including in those cases that arose before or were

pending at the time section 358 was enacted. We can infer, therefore, that as applied to this amendment the "injustice and hardship" to be prevented, and the citizens' "health and safety" to be protected, refer to this objective, which may be undermined if a legislative oversight caused courts to inconsistently apply, or decline to apply, the statutory hearsay exception. P.L. 2023, ch. 646, Emergency Preamble; s*ee Eaton*, 577 A.2d at 1165 (explaining that even in the absence of an express identification of the emergency to be avoided, we may infer from the context the nature of the emergency); *see also* Committee Hearing on L.D. 2290 (oral testimony) (explaining that the amendment was "urgent" because there are conflicting court decisions as to whether section 358 can apply to cases that were pending prior to the original statute's enactment, and children who have been injured are being called upon to be witnesses in criminal and civil cases and will be harmed).[6]

[¶24] Thorndike's argument that the emergency enactment of section 358(5) violates article IV, part 3, section 16 of the Maine Constitution principally relies upon our decision in *Payne v. Graham*, 118 Me. 251, 107 A.

---

[6] Section 358 was initially enacted to serve an "important policy goal of protecting Maine's most vulnerable population, children and disabled adults, from sexual assault and physical abuse." *See An Act to Permit Recordings of a Protected Person to Be Admissible in Evidence: Hearing on L.D. 765 Before the J. Standing Comm. on the Judiciary*, 131st Legis. 1 (2023) (written testimony).

709 (Me. 1919). In *Payne*, however, we held the emergency preamble to be constitutionally deficient because we had concluded that the preamble failed to express *any* facts or *any* emergency. *Payne*, 118 Me. at 256, 107 A. at 710.[7] Here, the Legislature did sufficiently express facts that "can constitute an emergency" and therefore acted within its constitutional authority under article IV, part 3, section 16 of the Maine Constitution. *Morris*, 147 Me. at 102, 83 A.2d at 563.

## B.    Separation of Powers

[¶25]   Thorndike next argues that enactment of 16 M.R.S. § 358(5) constitutes unlawful legislative interference with a judicial function because it establishes a rule of evidence that was specifically targeted at, and intended to affect, his case by overruling the court's March 21 order excluding the video recording of the forensic interview. He asserts that this legislative action violates the doctrine of separation of powers set out in article III of the Maine Constitution.[8] *See* Me. Const. art. III, §§ 1-2.

---

[7] Moreover, *Payne*, which was decided over a century ago, represents the only case brought to our attention in which we have held after the enactment of emergency legislation that its preamble did not satisfy constitutional requirements and therefore the legislation did not take effect until the regular effective date of non-emergency legislation enacted during the same session.

[8] Thorndike also suggests that the amendment adopting section 358(5) essentially was a private and special law enacted in violation of article IV, part 3, section 13 of the Maine Constitution. A private and special law is one enacted to address a particular issue, or which confers a specific privilege pertaining to a single individual or group rather than applying uniformly to all. *See, e.g., Durham v. Lewiston*, 4 Me. 140, 140, 144-45 (1826) (invalidating a private resolve granting one party appellate rights not available to others); *Lewis v. Webb*, 3 Me. 326, 336-37 (1825) (voiding a resolve attempting to set aside a final judgment in a particular case). The amendment to 16 M.R.S. § 358 is

[¶26]   Although we have emphasized that the separation of powers doctrine incorporated in the Maine Constitution is "rigorous," *Burr v. Dep't of Corrs.*, 2020 ME 130, ¶ 20, 240 A.3d 371 (quotation marks omitted), and that this Court "has inherent power to establish rules for the orderly conduct of business before it," *State v. Pinkham*, 383 A.2d 1355, 1356 n.2 (Me. 1978) (quotation marks omitted)—including rules of evidence, *see State v. Doucette*, 544 A.2d 1290, 1294 n.3 (Me. 1988)—we have never said that our Constitution forecloses the Legislature from enacting a statute addressing the admissibility of evidence in specific contexts.   Indeed, we have long recognized the Legislature's authority to do so.  *See Berry v. Lisherness*, 50 Me. 118, 120 (1862) ("It is not questioned that the Legislature may prescribe what evidence shall be received in Courts and the effect of that evidence, and may restrict or enlarge such rules."); *State v. Hurley*, 54 Me. 562, 563 (1867) ("The power of the Legislature to change or modify existing rules of evidence, or to establish new ones, has been exercised too long to be a matter of doubt." (citing Massachusetts law)); *Mansfield v. Gushee*, 120 Me. 333, 336, 114 A. 296, 298

---

not limited solely to Thorndike's case, and it was not a "legislative attempt[] to single out certain named individuals for benefits not available to the general citizenry." *Nadeau v. State*, 395 A.2d 107, 112 (Me. 1978).  Rather than benefitting or singling out a particular individual, section 358, as amended, applies uniformly to all victims and all defendants whose cases were pending at the time section 358 was initially enacted, as well as to cases brought subsequently that are based on conduct that occurred prior to its initial enactment, furthering an important legislative policy.

(1921); *Ziehm v. Ziehm*, 433 A.2d 725, 727 (Me. 1981) ("The legislature has the power to prescribe rules of evidence provided that they pass constitutional muster." (citation omitted)); *State v. Shellhammer*, 540 A.2d 780, 782 (Me. 1988) ("Contrary to the District Court's finding that [a statute] is unconstitutional because the Legislature purported to exercise a judicial power to establish rules of evidence, this Court has specifically held that the Legislature has the power to prescribe rules of evidence provided they pass constitutional muster."); *Irish v. Gimbel*, 1997 ME 50, ¶ 15, 691 A.2d 664 (rejecting a separation of powers challenge to the statute permitting admission of a medical review panel's findings as an exception to the hearsay rule); *see also* M.R. Evid. 802 ("Hearsay is not admissible unless any of the following provides otherwise: [*a*] *statute*; [t]hese rules; or [o]ther rules prescribed by the Maine Supreme Judicial Court." (emphasis added)).[9]

---

[9] This is not to say that the Legislature's authority is without limits. As noted, legislation must not displace or interfere with this Court's inherent authority "to establish rules for the orderly conduct of business before it," *State v. Pinkham*, 383 A.2d 1355, 1356 n.2 (Me. 1978), and must otherwise "pass constitutional muster," *Ziehm v. Ziehm*, 433 A.2d 725, 727 (Me. 1981). As the Massachusetts Supreme Judicial Court noted, for example, although the Legislature has the power to prescribe rules of evidence, "the power to do so does not mean that the reliability of every type of evidence the Legislature may deem admissible . . . is automatically insulated from challenge and review on reliability grounds." *Commonwealth v. Camblin*, 31 N.E.3d 1102, 1111 (Mass. 2015). Due process considerations, the Ex Post Facto Clause, and the Confrontation Clause are a few of the constitutional limits that may bear upon the admissibility of evidence, which, under the principles of separation of powers, fall within our purview to ultimately determine. *Cf. In re S. N.H. Med. Ctr.*, 55 A.3d 988, 997 (N.H. 2012) ("Of course, while the legislature shares authority with the judiciary to regulate court procedure, there obviously are limits on how far the legislature may go. The legislature may not, for example, enact procedural statutes that compromise the core adjudicatory functions of the judiciary

[¶27]  Moreover, the enactment of section 358(5) does not interfere with or usurp a judicial function.  Section 358 as amended does not mandate that a recorded CAC video interview be admitted in evidence.  Indeed, it specifically states that the CAC video interview must not be otherwise inadmissible under the Maine Rules of Evidence.  16 M.R.S. § 358(3)(H).  Nor did it compel the trial court in this case to reverse its prior ruling or require the admission of the recorded interview.  Rather, the amendment clarified that the hearsay exception in section 358 may apply in any case pending on, or based on conduct that occurred prior to, section 358's original enactment date.  *See* Comm. Amend. A to L.D. 2290, No. H-982 (131st Legis. 2024) (explaining that the amendment to section 358 was intended as clarification only).  Here, the trial court retained the discretion to deny the State's motion for reconsideration or to exclude the video, in whole or in part.

[¶28]  Finally, the Legislature may, within the bounds of the Maine Constitution, "make such a change . . . and thereby undo what it perceives to be the undesirable past consequences of a misinterpretation of its work product," even when that change may affect a pending judicial proceeding.  *MacImage of*

___

to resolve cases fairly and impartially and to protect the constitutional rights of all persons who come before the courts.").

*Me., LLC v. Androscoggin Cnty.*, 2012 ME 44, ¶ 23, 40 A.3d 975 (quotation marks omitted). In *MacImage*, we rejected a similar challenge to emergency legislation enacted in response to a pending lawsuit, noting that "[t]he constitutional separation of powers is not always undermined when the Legislature passes legislation that affects cases that are pending in the judicial system."[10] *Id.* ¶ 27 (quotation marks omitted). Because the emergency legislation in that case was policy-based, served a broad public purpose, and did not "constitute an attempt to overturn a decision" in a pending action, the Legislature "did not . . . usurp the adjudicatory power of the courts" in violation of the separation of powers provision in the Maine Constitution. *Id.* ¶ 29. The same is true here.

### III. CONCLUSION

[¶29] Based on the foregoing, we conclude that the Legislature's emergency enactment of section 358(5) did not violate the Maine Constitution,

---

[10] In *MacImage*, during the pendency of litigation involving the reasonableness of fees proposed to be charged by county governments for requested bulk digital copying of public land records, the Legislature enacted legislation amending the fee schedules with the expectation that the legislation would resolve the litigation. *MacImage of Me., LLC v. Androscoggin Cnty.*, 2012 ME 44, ¶¶ 5, 12, 40 A.3d 975. The trial court determined, however, that the amended fee schedules did not apply because the legislation failed to specify that it applied retroactively. *Id.* ¶ 12. After the parties appealed, and while the appeal was pending, the Legislature—in recognition of its oversight—enacted emergency legislation to remedy its oversight. *See id.* ¶ 14.

and the trial court did not err or abuse its discretion in admitting the video recording of the victim's forensic interview at trial.

The entry is:

Judgment affirmed.

---

Tyler J. Smith, Esq. (orally), Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellant Townsend Thorndike

Jacqueline Sartoris, District Attorney, and Carlos Diaz, Asst. Dist. Atty. (orally), Cumberland County District Attorney's Office, Portland, for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2021-3766
FOR CLERK REFERENCE ONLY